Dijuan Santos
22449-038
FCI McKean
P.O. Box 8000
Bradford, Pennsylvania
16701

Tony Anastas
U.S. Clerk of Courts
Clerks Office
Suite 2300
United States Courthouse
1 Courthouse Way
Boston, Massachusetts
02210

RE: U.S. v. Santos
1:98-CR-10328-013-WGY.

Honorable:
William G. Young,
U.S. Chief Justice
District of Massachusetts

04 12362

MAGISTRATE JUDGE

Dated: October 20, 2004.

Dear Clerk of Courts: Tony Anastas,

Enclosed please find a copy of a Motion filed by: Petitioner: Dijuan Santos, Pro Per In Propria Persona Proceeding Sui Juris, for your review & docketing. Sent via: **U.S. Department of Justice: Federal Bureau of Prisons: "MAIL BOX,"** I placed this Motion, sent pursuant to: **Caldwell v. Amend, 30 F.3d 1199; Houston v. Lack, 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct. 2379 (1988),** Prisoners' Pro Se Motion Judgment N.O.V. was deemed filed on date Motion was Placed in Prison's Officials hands & or **"Legal Mail Box"** as opposed to date of its receipt by Court Clerk, AUSA'S, et al. I, Petitioner/ Claimant/Affiant: Santos, hereby Certify that I have sent this: **Motion/Claim/Affidavit,** via: U.S. Mail, Postage Prepaid on: 20th day of October 2004, also this Motion/ Claim/Affidavit is sent pursuant to:
**Lema v. United States, 987 F.2d 48, 54 n.5 (1st Cir.1993);**
**Boag v. MacDougall, 454 U.S. 364, 70 L.Ed.2d 551, 102 S.Ct. 594 (1982);**
**Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (Per Curiam);**
**Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (Per Curiam);** Pro Se litigants pleadings are to be construed liberally & held to less stringent standards than formal pleadings drafted by lawyers.

Respectfully Submitted By: Petitioner/Claimant/Affiant:

| | | |
|---|---|---|
| Pro Per | Dijuan Santos | Signed Under: |
| In Propria | 22449-038 | Title 18 U.S.C. |
| Persona | FCI McKean | §1623, & Under: |
| Proceeding | P.O. Box 8000 | Title 28 U.S.C. |
| Sui Juris | Bradford, Pennsylvania | §1746. |
| | 16701 | |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON

| | |
|---|---|
| Dijuan Santos<br>Petitioner<br><br>V.<br><br>United States of America<br>(John A. Wartman, AUSA &<br>Michael J. Sullivan, USA,)<br>Respondents. | Civil Action Number:<br>_____<br><br>Criminal Action Docket<br>Number:<br>1:98-CR-10328-013-WGY.<br><br>William G. Young, Chief<br>Justice, U.S. District<br>Court (D.Massachusetts).<br>October 20th 2004. |

### MOTION FOR RELIEF FROM JUDGMENT VIA: FEDERAL RULE OF CIVIL PROCEDURE RULE 60(b)

COMES NOW, Petitioner: Dijuan Santos, Pro Per In Propria Persona Proceeding Sui Juris, in the above captioned case & titled Motion/ Affidavit/Claim, pursuant to: **FRCP 60(b),** respectfully moves this Honorable Court for relief from the effect of the Order entered by this Court via: Sentencing Petitioner, on: **November 28, 2000,** Sentence & Judgment to two hundred & sixteen months = 18 years of incarceration to: Petitioner, by the preponderance of the evidence, without a jury trial determinations of petitioner's prior convictions & enhancements. All in violations of petitioner's Due Process, 5th, 6th, 8th, & 14th, Amendment(s) of the United States Constitution, & Equal Protection of the Law. Additionally in violations of Newly decided United States Supreme Court Case Law Authority Law of the Land: Blakely v. Washington, 542 U.S.____ June 24, 2004.

Also in violations of: Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958); "No Legislator or Executive or Judicial officer can war against the U.S. Constitution without violating his/her undertakings to support it." Or in the alternative, Petitioner: Dijuan, (hereinafter referred to as Petitioner), would move the Court to otherwise strike and Procedurally and Factually Flawed the petition & Memorandum filed which precipitated the Court Order Judgment & Conviction of Petitioner.

## A. JURISDICTION

If Petitioner's claim of fraud upon the Court is deemed improperly filed pursuant to **FRCP 60(b)(6)**, it may still be treated as a motion addresses to the inherent power of the Court to set aside a judgment procured by fraud upon the Court; <u>United States v. Buck</u>, 281 F.3d 1336, 1339 (10th Cir.2002). <u>United States v. Kouri-Perez</u>, 187 F.3d 1, 7-8 (1st Cir.1999); ("The challenged--sanction is expressly predicated on the "Inherent Powers" of the Federal Courts, The Judicial Branch of the United States Government. [FN3]

**Article III Courts** were inbued with an array of "Inherent Powers" in performing their case-management functions from the moment of their establishment, powers never specifically enumerated in the Constitution or in legislative enactments, yet "necessary to the exercise of all other [] enumerated judicial powers"). <u>United States v. Horn</u>, 29 F.3d 754, 759 (1st Cir.1994) (Citing: <u>United States v. Hudson</u>, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)); See also: <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43-44, 11 S.Ct. 2123, 115 L.Ed.2d 27 (1991); <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). These implicit powers include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district & or the U.S. District Courts, the Judicial Branch of Government's integrity or disrupt its efficient management of the proceedings.

See: **Chambers**, 501 U.S. at 43, 111 S.Ct. 2123 (noting that inherent powers of the District Courts, the U.S. Appeals Courts & the United States Supreme Court's powers include authority to "control admission to its bar to discipline attorneys who appear before it") <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); )"The power of the Courts

(2)

over members of its bar is at least as great as its authority over litigants.") Moreover, its criminal contempt power over counsel inheres in the Judicial Branch of Government: The U.S. District Courts, THe U.S. Appeals Courts, & the United States Supreme Court's Inherent or its so-called Supervisory Powers. See: <u>In re Terry</u>, 128 U.S. 289, 302-03, 9 S.Ct. 77, 32 L.Ed. 405 (1888); <u>Horn</u>, 29 F.3d at 765 n.13 ("[C]ontempt originated as an aspect of the Supervisory Power.")

In time, one of these inherent powers were made explicit, either by enactment of the promulgation of procedural, disciplinary or ethical rules...

The Federal District Courts, & the U.S. Appeals Courts & The U.S. Supreme Court, nonetheless retain their **"INHERENT POWER"** to impose sanctions unless its exercise directly conflicts with subsequently promulgated rules or enactments. See: <u>Chambers</u>, 501 U.S. at 46, 50, 11 S.Ct. 2133 ("[T]he Court ordinarily should rely on the Rules rather than the inherent power. "But if--the informed discretion of the Court, neither the statute nor the Rules are up to the task, the Court may safely rely on its **inherent power[s]**," which "must continue to exist to fill in the interstices."); <u>Mark Indus. v. Sea Captain's Choice, Inc.</u>, 50 F.3d 730, 733 (9th Cir.1991); cf. <u>John's Insulation, Inc. v. Addison and Assocs., Inc.</u>, 156 F.3d 101, 108 (1st Cir.1998) (Courts invoking inherent powers may be guided by analogy to the Rules). Thus, to say that the sanctions imposed below are punitive in nature is not to suggest that they are tantamount to de facto criminal contempt adjudications.")

(3)

**U.S. v. Stokes, 124 F.3d 39, 46 (1st Cir.1997)** ([The dismissal is equally vulnerable if viewed as an exercise of the Court's Supervisory Powers. Such Powers enable Courts, within limits, to formulate procedural rules not specifically contemplated by the Constitution or codified in positive law. See: **United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983).** Thus, Courts may invoke their supervisory powers to implement a remedy for violation of recognized rights, to preserve judicial integrity, or to deter illegal conduct. See: id., see also: **United States v. Horn, 29 F.3d 754, 760 (1st Cir.1994).** Even so, Courts must use these powers "sparingly." **United States v. Santana, 6 F.3d 1, 10 (1st Cir.1993).** The U.S. Courts supra, did not invoke its supervisory powers, but it did voice lingering concerns about "Fundamental Fairness" & "Fair Play." **United States v. Stokes, 947 F.Supp. at 557.** Stokes reads these references as reflecting the Courts belief that the government somehow abused its professional discretion in lodging the indictment and thus, denied Stokes Substantive Due Process. The facts did not bear out this theory. Although dismissing an indictment on Substantive Due Process grounds is not unprecedented, it is extremely rare. Such a drastic step is reserved for cases of **"serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process." United States v. Giorgi, 840 F.2d 1022, 1030 (1st Cir.1988)** (citation omitted). **United States v. Horn, 29 F.3d 754, 759-760 (1st Cir.1994)** ([Supervisory Power, sometimes known as inherent power, encompasses those powers which, though "not specifically required by the Constitution or the Congress," **United States v. Hasting, 461 U.S. 499, 505 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983),**

(4)

are nonetheless "necessary to the exercise of all others," Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting: United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). See generally United States v. Santana, 6 F.3d 1, 9-10 (1st Cir.1993). Although the doctrine's ancestry can be traced to the early days of the Republic, see, e.g., Hudson, 11 U.S. at 34; See also: Ex Parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873); (observing that the "moment the Courts of the United States were called into existence...they become possessed of [inherent power"), full-scale genealogical dig would serve no useful purpose. It suffices to say that the doctrine emerged in modern form a half-century ago, see: McNabb v. United States, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed.819 (1943), and it has since developed most robustly in the area of criminal procedure, see: Sara Sun Beale, Reconsidering Supervisory Power in Criminal Cases, 84 Colum.L.Rev. 1433, 1435-64 (1984). While supervisory power is sometimes understood to derive from the Constitution, either as incidental to the Article II grant of judicial power, see: id. at 1464-83, or as implicit in the separation of powers, see: Eash v. Riggins Trucking, Inc., 757 F.2d 557, 562 (3d Cir.1985), the Court has made it clear that, at least as a general proposition. Congress may limit the power of lower Federal Courts by Rule or Statute, see: Chambers v. NASCO, Inc., 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991)...In what is not necessarily an exhaustive listing, the Court has recognized three purposes which the supervisory power may be dedicated:   (1) "to implement a remedy for violation of recognized rights; Due Process, etc.;

(2) to preserve judicial integrity;

(5)

>   (3) as a remedy designed to deter
>       illegal conduct."

Hasting, 461 U.S. at 505, 103 S.Ct. at 1978 (internal citation omitted).

Invoking this third theme, we have warned that **we will consider unleashing the Supervisory Power in criminal cases "[w]hen confronted with extreme misconduct and prejudice,"** in order "to secure enforcement of 'better prosecutorial practice and reprimand of those who fail to observe it.'" United States v. Osorio, 929 F.2d 929 F.2d 753, 763 (1st Cir.1991) (quoting: United States v. Pacheco-Ortiz, 889 F.2d 301, 310-11 (1st Cir.1989)). The Supervisory Power has definite limits. See: Hasting, 461 U.S. at 505, 103 S.Ct. at 1978. For one thing, the Supervisory Power Doctrine is interstitial in the sence that it applies only when there is no effective alternative provided by rule, statute, or constitutional clause. See: Chambers, 501 U.S. at 50-51, 111 S.Ct. at 2135-36.

For another thing, even when inherent powers legitimately can be invoked, they must be exercised with restraint and circumspection, both "because [they] are shielded from direct democratic controls," Roadway Express, 447 U.S. at 764, 100 S.Ct. at 2463, and "[b]ecause of their very potency." Chambers, 501 U.S. at 44, 111 S.Ct. at 2132. United States v. Curran, 926 F.2d 59, 63 (1st Cir.1991); ("Thus, we exercise our supervisory power to ensure that the district Court, during the sentencing phase of a criminal proceeding, follow "procedures deemed desirable from the viewpoint of sound judicial practice although in no-wise command by statute or the Constitution." Thomas v. Arn, 474 U.S. 140, 146-47, 106 S.Ct. 466, 470-71, 88 L.Ed.2d 435 (1985) (quoting: Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

In view of the significance of the sentencing procedure, "it is of the utmost importance no only that justice be done but that it appears to be done." United States v. Wolfson, 634 F.2d 1217, 1221 (9th Cir.1980); United States v. Kenny, 645 F.2d 1323 (9th Cir.1981), cert. denied, 452 U.S. 920,101 S.Ct. 3059, 69 L.Ed.2d 425 (1980).")

U.S. Constitution Amendment Five; see Bolling v. Sharpe, 347 U.S. 497, 500 (1954) (holding that the Due Process Clause of the Fifth Amendment places the same restrictions on actions by the Federal government that the Equal Protection Clause of the Fourteenth Amendment places on state governments).

Edward Walsh & Dan Eggen, **Ashcroft Orders Tally of Lighter Sentences: Critics Say He Wants "Blacklist" of Judges**, Washington Post, August 7, 2003, at A-1.

> See: **Francis Bacon, Of Judicature, in Essays** 316 (1654)
> ("And let no man weakly conceive, that just laws
> and true policy have any antipathy; for they are like
> the spirits and sinews, that one moves with the other.
>   Let Judges also remember-that Solomon's throne was
> supported by lions on both sides:  let them be lions,
> but yet lions under the throne; being circumspect that
> they do not check or oppose any points of Sovereighty.
>   Let no Judges also be ignorant of their own right,
> as to think there is not left to them, as a principle
> part of their office, a wise use and application of laws.")

As Judge Selya so aptly puts it, "when...the legislative trumpet sounds clearly, Courts are duty bound to honor the clarion call." United States v. Jackson, 30 F.3d 199, 204 (1st Cir.1994); Obedience to the Constitutional expression of the Congressional will is the hallmark of the Federal Judiciary--a vital aspect of its professionalism & its role in our system of government.

(7)

The Courts believes that the day of the downward departure is past. Congress and the United States Attorney General have instituted policies designed to intimidate and threaten Judges into refusing to depart downward, and those policies are working.

If the Court were to depart, the Assistant U.S. Attorney would be required to report that departure to the U.S. Attorney, who would in turn be required to report to the U.S. Attorney General: **John Ashcroft.** The Attorney General would then report the departure to Congress, and Congress could call the undersigned to testify and attempt to justify the departure. This reporting requirement system accomplished its goal: the Court is intimidated, and the Court is scared to depart. The reporting requirement has another, more invidious effect. Although the Courts has a high regard for the Assistant U.S. Attorneys who prosecute cases, there will be other cases such as this one in this instant case via this Petitioner, supra, in which the Federal Prosecutors will & has misused their authorities, supra, via: enhancing the petitioner's sentence without a valid jury trial determinations & also without the Federal Grand Jury's findings, by the mere low standard of proof by the preponderance of the evidence, at odds with the petitioner's Due Process, 1st, 5th, 6th, & 14th Amendment(s) of the United States Constitution & Equal Protection of the Law, & also inviolations of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 2362-63.147 L.Ed.2d 435 (2000); (Quoting: <u>Jones v. U.S.</u>, 526 U.S. 227, 243, 252-53 (Stevens, J.) and: <u>Blakely v. Washington</u>, 542 U.S._____ June 24, 2004.

The above cases "now" grants this Court to Reduce Petitioner's Sentence dramatically of "ALL" the enhancements without a Jury determination via: both Federal Grand Jury & Federal Petit Trial Jury.

(8)

The reporting requirement will have a devastating effect on our system of Justice which. for more than **200 years,** has protected the rights of the citizens of this country as set forth in the Constitution via: **"The Bill of Rights"** designed to keep oppressive government in line with the U.S. Constitution, Federal & State Statutes & Ethical Codes of Conduct. Our justice system depends on fair and impartial judiciary that is free from intimidation from the other branches of the United States Government.

**Chief Justice William H. Renhquist,** remarks to the Federal Judges Association Board of Directors Meeting (May 5, 2003), available at: http://www.supremecourtus.gov/publicinfo/speeches/sp 05-05-03.html

Warning that the reporting required by the **Feeney Amendment** "could amount to an unwarranted and ill-considered effort to intimidate individual judges in the performance of their judicial duties"); **An Ominous Attack on Judges,** New York Times, April 7, 2003, at A-18; Andrew Cohen, **The Umpire Strikes Back,** Am. Prospect, March 2004, at 15; Linda Greenhouse, <u>Chief Justice Attacks a Law as Infringing on Judges,</u> New York Times, January 1, 2004, at A-14; Martin, supra, at A-31 (criticizing the **Feeney Amendment** as an "effort to intimidate judges to follow sentencing guidelines") Vinegrad, <u>The Judiciary's Response to the PROTECT ACT, Supra, at 4.</u>

"The <u>very purpose</u> of a **Bill of Rights** was to withdraw certain subjects from vicissitudes of political controversy, to place them <u>beyond</u> the reach of majorities and <u>officials</u> and to establish them as <u>Legal Principles</u> to be applied by the Courts."
<u>West Virginia Board of Education v. Barnette,</u> 63 S.Ct. 1178, 1185 (1943). Congress **CANNOT,** merely by legislating amend the Constitution. <u>Meyer v. United States,</u> 47 S.Ct. 21 (1926).

Congress has expressed its desire that government attorneys comply with State & Local Federal Court Rules governing the practice of law. See: **28 U.S.C. §530B(a).** These ethical norms not only protect the individual, but also our system within a **democracy.** In the words of the late **Judge Burciaga:**
"[W]e must understand ethical standards are not merely a guide for the lawyer's conduct, but are an integral part of the administration of justice. Recognizing a Government Lawyer's role as a shepherd of justice, we must not forget that the authority of the Government lawyer does not arise from any right of the Government, but from power entrusted to the Government.
When a Government lawyer with enormous resources at his/her disposal, abuses this power and ignores ethical standards, he/she not only undermines the public trust, but also inflicts damage beyond calculation to our system of justice.
This alone compels the responsible and ethical exercise of power from "ALL" Three very important Branches of Government: **Judicial, Legislative & Executive,** to correct constitutionally, lawfully, & ethically the improper acts supra.

**Matter of Doe,** 801 F.Supp. at 479-80;

**Singleton,** 165 F.3d at 1314 (Kelly, dissenting).

**Singleton,** 165 F.3d at 1302 note 2: "[A] prosecutor who procures false testimony is surely subject to penalty under 18 U.S.C. §1623, "Perjury."

## 1. PROCEDURAL ISSUES

Arguably, the sole claim for relief in this instance is the fraud perpetrated in the Court through the actions of an individual who was not a party. Through his fraudulent, illegal and criminal acts, he procured the enhancement(s) on the Defendant/Petitioner, in violations of all of the above, supra.

Petitioner's filing the instant motion under purview of **FRCP 60(b)(3)** (which requires such a claim to be brought within one year of date of entry of the order). **FRCP 60(b)(6),** permits "for any **other** reason justifying relief from the operation of the judgment." In all candor, Petitioner, submits that reliance by him on that provision would be misplaced, because the clear

(10)

important of the language of clause **FRCP 60(b)(6)**, is that the clause is restricted to reasons other than those enumberated in the previous five clauses. See: <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863 n.11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); See also: 12 James Wm. Moore et al., Moore's Federal Practice §60.48 at 60-167 (3d ed.1997) (Moore's); 11 Charles Alan Wright, et al., Federal Practice & Procedure §2864, at 362 (2d ed.1995) (Wright & Miller).

Because fraud is one of the reasons for relief appearing in **Clause (3)**, it is not available as "any other reason" under **Clause (6)**.

Petitioner, concedes he cannot avoid the time restriction under **Clause (3)**. Nevertheless, **FRCP 60(b)** authorizes two other avenues for relief from the fraud upon the Court. The **Rule** states that it "does not limit the power of the Court (1) to entertain an independent action to relieve a party from a judgment, order, or proceeding...or (2) to set aside a judgment for Fraud upon the Court." **FRCP 60(b)**; see: 12 **Moore's §60.81 [1][b]** (distinguishing between an independent action and the **inherent power** to set aside a judgment for fraud upon the Court); 11 **Wright & Miller §2851 at 229 (same)**. The first additional avenue mentioned is an independent action. It is a narrow avenue. The Supreme Court has held that "under the Rule, an independent action should be available only **to prevent a grave miscarriage of justice."** As in this case supra. <u>United States v. Beggerley</u>, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). But the roadway is wide enough to allow the Petitioner's claim of Fraud Upon The Court. See: **11 Wright & Miller, §2868 at 399-400;** id., **§2870, at 415;** 12 **Moore's §60.81 [1][a]**. There is no set time for filing an independent action, although relief may be barred by laches. See: **11 Wright & Miller §2868, at 401-02;** 12 **Moore's §60.21 [2], at 50-60.**

(11)

The second procedure for obtaining relief is to invoke the **inherent power** of the Court to set aside its judgment if procured by fraud upon the Court. Relief is not dependent on the filing of a motion by a party to the original judgment; the Court may assert this power **sua sponte**. See: 11 **Wright & Miller** §2865, at 380; id., at 60-60 (party seeking relief need not have been a formal----party to original proceeding); id., at 60.21 [4][f]; id., §60.62, at 60-195. There is no time limit for such proceedings **nor does the doctrine of laches apply.** (Emphasis Added) See: Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir.1985) (En Banc).

The substance of Petitioner's pleading should control, not the label. The Court should construe the Motion either as an independent action or, because "[t]here are no formal requirement from asserting a claim of fraud on the Court," 12 **Moore's** §60.21 [4][f], at **60-60**, as a pleading involking the Court's **inherent power** to grant relief for **fraud upon the Court.** Petitioner's claim of fraud upon the Court should not be dismissed on procedural grounds.

The **Bulloch** Court described such fraud as follows:

"Fraud on the Court...is fraud which is directed to the judicial machinery itself and is not fraud between the parties of fraudulent documents, false statements or perjury...It is thus fraud...where the impartial functions of the Court have been directly corrupted."

In Robinson v. Audi Aktiengenesellschaft, 56 F.3d 1259, 1267 (10th Cir.1995); The Court said:

> "Fraud on the Court, whatever else it emodies, requires a showing that one has acted with an intent to deceive or defraud the Court. A proper balance between the interests underlying finality on the one hand & allowing relief due to inequitable conduct on the other makes it essential that there be a showing of **conscious wrongdoing**--what can properly be characterized as a deliberate scheme to defraud-before relief judgment is appropriate."

(12)

PETITIONER'S SENTENCING COURT LACKED JURISDICTION TO IMPOSE THE
SENTENCE BEYOND THAT CONTEMPLATED BY THE CHARGES TO
WHICH PETITIONER WAS NOT FOUND GUILTY OF BY FEDERAL JURY TRIAL
IN VIOLATIONS OF NEWLY DECIDED U.S. SUPREME COURT CASE:
BLAKELY V. WASHINGTON, 542 U.S._____: JUNE 24, 2004;
& APPRENDI V. NEW JERSEY, 530 U.S. 466 (2000);
WHICH SUPPORTS THE SIXTH--AMENDMENT OF THE U.S. CONSTITUTION

Because the government failed to file an information or seek an indictment charging the factual findings used to enhance Petitioner's enormous sentence, the sentencing Court plainly lacked Jurisdiction to impose the enhanced sentence. Petitioner, did not object to the enhancement(s) on jurisdictional grounds at trial nor did he raise the issue on Direct Appeal. Instead, he presents this instant petition under aegis of **Title U.S.C. §2255,** which allows collateral attack on a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, **or that the Court was without jurisdiction to impose such sentence,** or that the sentence was in excess of the maximum authorized by law," and premises his right to present this procedurally tardy claim on:

**Blakely v. Washington, 542 U.S._____ June 24, 2004,** which found that "when a judge inflicts punishment that the jury's verdict did not support & did not allow, thus, the jury has not found all the facts "which law makes essential to the punishment," (citations omitted), and "the judge exceeds his property authority." See: **Teague v. Lane,** 489 U.S._____(1989).

The opinion in **Blakely,** established that the any fact that increases the upper level or bound on a judge's sentencing discretion is an element of the offense and must be charged in an indictment or information and submitted to a Jury. An enhanced sentence

(13)

is a special remedy proscribed ultimately through an Act of Congress through the U.S. Sentencing Commission. Prosecutorial discretion is vested in the Executive Branch of Government and a District Court has no authority to exercise it or pretermit it. Unless and until, per **Blakely**, the government files and serves an information or obtains an indictment alleging facts which support the additional allegations, the District Court has no power to act with respect to an enhanced sentence; the Court can no more enhance the sentence than it could impose imprisonment under a statute that only prescribes a fine.

Even harmless error cannot give the District Court authority that it does not possess. Notably, however, Jurisdictional defects, by constrast, **cannot** be procedurally defaulted. Federal Courts of limited jurisdiction, delving power soley from Article III of the Constitution and from Legislative Acts of Congress. See: **Insurance Corp. of Ir., Ltd. v. Compagnie des Bauzites de Guinee**, 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Nor can District Courts derive power to act from the parties. Consequently, neither the government nor Petitioner are capable of conferring jurisdiction foundation the Court lacks simply by waiver or procedural default. See: **United States v. Griffin**, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938); ("Since-lack of jurisdiction of a Federal Court touching Court touching the subject matter of the litigation cannot be waived by the parties, we must upon this Appeal examine the contention"); **Hertz Corp. v. Alamo Rent-a-Car**, 16 F.3d 1126, 1131 (11th Cir.1994) ("Subject matter jurisdiction can never be waived or conferred by the consent of the parties")

(14)

(quoting: <u>Latin Am. Property & Cas. Insur. Co. v. Hi-Lift Marina, Inc.</u>, 887 F.2d 1477, 1479 (11th Cir.1989); <u>Fitzgerald v. Seaboard Sys. R.R. , Inc.</u>, 760 F.2d 1249, 1250 (11th Cir.1985). Because jurisdictional claims may not be defaulted, a defendant need not show "cause" to justify his failure to raise such a claim.

The Seventh Circuit reached a similar result in: <u>Kelly v. United States</u>, 29 F.3d 1107 (7th Cir.1994). In Kelly, as is urged here the Court considered a **TITLE 28 U.S.C. §2255** collateral attack on a sentence where the prosecutor failed to timely file the information. The Court concluded that **Kelly**, was not required to show cause and prejudice to excuse his failure to challenge the District Court's jurisdiction, explaining, "The point of cause and prejudice, we repeat, is to overcome the waiver. But this analysis of course assumes that the error in question is a waivable one. **And Jurisdiction defects are not.**" Id., at 1112 (emphasis added), see also: <u>United States v. Broadwell</u>, 959 F.2d 242 (9th Cir.1992), where the Ninth Circuit, in an unpublished opinion--agreed, stating that "because the error is jurisdictional, the defendant need not show cause and prejudice." Because jurisdictional defects are non-waivable, **Party** need not provide the Court with an excuse adequate to convince it to forgive that "Waiver."

The facts of this reveal that the District Court plainly lacked jurisdiction to impose the enhanced sentence complained of, here, and Petitioner need not show cause and prejudice to collaterally attack the enhanced sentence because jurisdictional claims cannot be procedurally defaulted. Petitioner's sentence should--be vacated & resentenced consistent with the commands and dictates of: <u>Blakely v. Washington</u>, supra.

(15)

<u>Harduvel v. General Dynamics Corp.</u>, 801 F.Supp. 597 (M.D. Fla.1992);

**Rules 60(b)(6):** Saving Clause, "Fraud on the Court"

[17]  Rule 60(b)(6) offeres relief from judgment only to accomplish justice and only in the most "extraordinary" circumstances. See: <u>Olle v. Henry & Wright Corp.</u>, 910 F.2d 357, 365 (6th Cir.1990) FRCP 60(b)(6) confined to "unusual and extreme situations");

<u>Matter of Emergency Beacon Corp.</u>, 666 F.2d 754 (2d Cir.1981).

<u>Rodriguez v. Mitchell</u>, 252 F.3d 191 (2d Cir.2001), amended,____F.3d _____(2d Cir.2002). <u>Rodriguez</u>, held that a Rule 60(b) motion challenging the "integrity" of a collateral attack proceeding should not be treated as a second collateral attack on a conviction, even though the motion ultimately seeks to overturn the conviction. Id. at 198-200.

**Fraud Upon The Court:**   <u>U.S. v. Buck</u>, 281 F.3d 1336 (10th Cir.2002):

1. Procedural Issues

> [2]  Appellants/Petitioner's claim for relief under **Rule 60(b)(6)** is based on the contention that the attorneys for the United States committed fraud upon the Court in obtaining the quiet title judgment. Before considering the merits of the contention, we address a procedural matter.
> We hold that a claim of fraud, including fraud upon the Court, cannot be brought under **clause (b)(6)**. As we shall explain, however, the error in labeling the pleading is not fatal because **Rule 60(b)** permits "OTHER" means pursuing the relief they seek.

Nevertheless **Rule 60(b)** authorizes two other avenues for relief from fraud upon the Court.  The rule states that it "does not limit the power of a Court [1] to entertain an independent action to relieve a party from a judgment, order, or proceeding...or [2] to set aside a judgment for fraud upon the Court."  Rule 60(b); see 12  **Moors's §60.81 [1]]b]**  (distinguishing between an independent action and the **inherent power** to set aside a judgment for fraud upon the Court); 11 **Wright & Miller §2851,** at 229 (same).

[4,5] The first additional avenue mentioned is an independent action. It is a narrow avenue. The Supreme Court has recently held that "under the Rule, an independent action should be available only to prevent a grave miscarriage of justice." United States v. Beggerly, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). But the roadway is wide enough to allow at least some claims of fraud. See: 11 Wright & Miller §2868, at 399-400; id. §2870, at 415; 12 Moore's §60.81[1][a].

There is no set time limit for filing an independent action, although relief may be barred by laches. See: 11 Wright & Miller §2868m at 401-02; 12 Mooer's §60.21 [2], at 60-50.

[6.7] The second procedure for obtaining relief is to invoke the **inherent power** of the Court to set aside its judgment if procured by fraud upon the Court. Relief is not dependent on the filing of a motion by a party to the original judgment; the Court may assert this power **sua sponte**. See: Wright & Miller §2865, at 380; id. §2870, at 411; 12 Mooer's §60.21 [4][e], at 60-60, (Party seeking relief need not have been a formal party to original proceeding); id §60.21 [4][f]; id. §60.62, at 60-195. There is no time limit for such proceedings, nor does the doctrine of laches apply. See: Bulloch v. United States, 763 F.2d 115, 1121 (10th Cir.1985) (en banc); 11 Wright & Miller §2870, at 412; 12 Moore's §60.21 [4][g].

Apprendi v. New Jersey, 530 U.S. 466 (2000); Petitioner argues that Apprendi should be read expansively to require that any factor that impacts a defendant's sentence under the guidelines must appear in the indictment & be submitted to the Jury & decided unanimously beyond a reasonable doubt.

Petitioner, **recognizes** that in: <u>United States v. R.C.L.</u>, **503 U.S. 291 (1992)**, coupled with **Apprendi**, & **Blakely**, supports Petitioners position. In addition, there has been a less expansive reading of **Apprendi**, by "all" of the U.S. Appeals Courts through-out the country until "NOW" the newly decided U.S. Supreme Court caselaw authority law of the land: <u>Blakely v. Washington</u>, **542 U.S. _____ June 24, 2004**. The United States Guidelines are based on a statutory mandate. See: **Title 18 U.S.C. §3553(b)**.

These statutory factors are no different footing than specific provisions attached to specific penalty provisions attached to specific crimes. In <u>United States v. R.C.L.</u>, **503 U.S. 291 (1992)**, the U.S. Supreme Court interpreted **18 U.S.C. §5037(c)** (setting the maximum term of imprisonment that would be "authorized" if a juvenile was tried and convicted as an adult). The Supreme Court concluded that the maximum penalty authorized **was not** simply the maximum term authorized by the specific penalty provision of the statute defining the offense; but rather, the upper limit of the Guidelines range in that case that was lower than the specific penalty provision). See **id. at 306-07.**

The U.S. Supreme Court's holding in **Blakely, supra,** most definitely affects the sentencing guidelines at the very least via: Enhancements & Reasonably Foreseeable conduct & Relevant conduct, that was not decided by both the Federal Grand Jury via: Indictment & also by the Federal Trial Petit Jury, beyond a reasonable doubt unanimously. Thus, Petitoner's sentence is thus, illegal, & this Court has no jurisdiction to enhance petitioner's sentence beyond what the Jury decided.